OPINION OF THE COURT
Kevin C. Fogarty, J.
On September 14, 1983, Special Services for Children filed a petition in this court, alleging that the child Lydia K., age seven, is an abused child in that on or about August 29, 1983, respondent mother intentionally, or in the alternative, recklessly or negligently pushed her out of an eighth-story window, causing the child to fall to the ground and sustain serious physical injuries. The petition further alleged that the child’s physical, mental and/or emotional condition has been impaired in that the respondent father and respondent mother failed to exercise a minimum degree of care in supplying the child with adequate food and shelter although financially able to do so.
At the fact-finding hearing, petitioner produced two witnesses who testified to statements made by the child to them concerning the cause of the fall. The paramedic testified that he arrived at the scene of the occurrence at approximately 6:15 p.m., within 4 to 7 minutes after the accident was reported. He immediately approached the child and asked her what had happened. The child replied “Mommy pushed me”. The paramedic further testified that the child was in a state of shock and had low blood pressure and a rapid pulse.
*42 The nurse testified that she was working in the X-ray room of Elmhurst Hospital on August 29,1983 when Lydia K. was admitted in critical condition. She further testified that she asked Lydia if her mother pushed her and she responded “yes”.
When interviewed in camera as a witness for the respondent, Lydia, who is seven years old, denied making the statements implicating her mother and testified that she accidentally fell when she was leaning on the windowsill and throwing water out of the window. The recantation was not impressive.
The respondent mother has denied pushing her daughter and has stated that, although she was in another room in the apartment at the time Lydia fell out of the window eight stories to the ground, she was not made aware of the incident until a bystander came to the door and informed her.
With regard to the respondent father, the testimony indicates that he was not present in the apartment at the time the incident occurred on the evening of August 29, 1983. Just prior to the time of the occurrence, the respondents had an argument and the respondent father left the apartment. He went to his mother’s home, which is three to four blocks away to have dinner. He stayed for only 10 minutes and then returned to the apartment finding Lydia on the pavement surrounded by a crowd with her mother beside her. The coincidental timing of his return, within minutes of the fall, was unexplained.
The issue before the court is whether the out-of-court statements of the child, admissible pursuant to section 1046 (subd [a], par [vi]) of the Family Court Act and sufficient for a finding if corroborated, must be supported by corroboration of the act of the mother, namely, the “push” or simply by corroboration of the “fall”. Or in the alternative, is the statement of the child admissible without corroboration as a “spontaneous declaration” and sufficient to meet the statutory burden of proof for child abuse pursuant to section 1012 (subd [e], par [i]) of the Family Court Act and child neglect pursuant to section 1012 (subd DO, par [i], cl [A]) of the Family Court Act.*
*43 Medical evidence clearly substantiates the “fall” as does the testimony of the paramedic. However, standing alone all that is established is that the child fell and was injured. There are “few, if any, accidental injuries to children which could not have been prevented, or substantially mitigated, by keener parental guidance, broader foresight, closer protection and better example.” (Holodook v Spencer, 36 NY2d 35, 45.) An isolated injury does not constitute neglect. (Matter of Shelly Renea K., 79 AD2d 1073.) There must be some showing that the parents were aware of the inherent danger of the situation. There being no such evidence presented, evidence of the “fall” is insufficient to support a finding of abuse or neglect in this case. However, evidence of the “push,” if sufficient, may support a finding of severe abuse against the respondent mother.
Section 1046 (subd [a], par [vi]) of the Family Court Act creates an exception to the hearsay rule applicable only to child protective proceedings under article 10 of the Family Court Act. This provision specifically provides that: “previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence; provided, however, that no such statement, if uncorroborated, shall be sufficient to make a fact-finding of abuse or neglect” (Family Ct Act, § 1046, subd [a], par [vi]).
“There persists an important residual area where, by common law, constitution or statute some types of evidence standing alone are treated as inadequate to sustain finding.” (Weinstein, Cases and Material on Evidence [7th ed], p 1182.) Since rules on corroboration are designed to protect the innocent, the requirement of corroboration was apparently added to section 1046 (subd [a], par [vi]) of the Family Court Act to insure that statements made by a *44 child, otherwise inadmissible under the rules of evidence, are sufficiently trustworthy and reliable to support a finding of abuse or neglect. (See, generally, ibid.)
Corroboration requirements generally fall into three areas: confessions, testimony of victims and testimony of accomplices. The confession corroboration rule only requires additional evidence that the event occurred. Since confessions or admissions against interest are inherently reliable, additional evidence connecting the respondent to the event is not required. (Matter of Carmelo E., 57 NY2d 431.) Testimony of victims or accomplices are not so inherently reliable since they reflect on conduct of third parties. Accordingly, they require stricter scrutiny and the corroborative evidence must tend to connect the respondent to the event. (See People v Hudson, 51 NY2d 233; People v Thompson, 30 NY2d 971.) Corroborating evidence has been defined as “ ‘[additional evidence of a different character to the same point * * * such evidence as tends to confirm and strengthen the testimony of the witness sought to be corroborated; that is, such as tends to show its truth, or the probability of its truth.’ ” (Matter of Hawkins, 76 Misc 2d 738, 739-740, citing Ballentine’s Law Dictionary [3d ed, 1969], at p 276.) The corroborative evidence in child protective proceedings must be evidence from an independent source of some material fact tending to implicate the respondents in the allegations of abuse or neglect, other than the child’s statements. (See Matter of Hawkins, supra, at p 740.) The only evidence which tends to establish that the mother “pushed” the child out of the window are the two statements made by the child soon after the incident. Under the facts and circumstances of this case, one statement cannot be used to corroborate the other.
Lacking the corroboration required by section 1046 (subd [a], par [vi]) of the Family Court Act as to the cause of the fall, inquiry must now turn to whether the statements made by the child are sufficiently reliable to support a finding of abuse under any other theory or rule of evidence. The initial statement, “Mommy pushed me”, which was made by the child to the paramedic within minutes of the eight-flight fall is admissible as a spontaneous declaration. The requirements for admissibility under *45 this exception are: (1) the occurrence of an event or condition sufficiently startling; (2) a statement brought about by the event or condition and relating to it; and (3) the absence of time to fabricate. (Code of Evidence for State of NY, NY Law Rev Comm, Comment to § 803, subd [c], par [1].) In determining whether a statement is admissible as a spontaneous declaration, “the court must ascertain whether, at the time the utterance was made, the declarant was under the stress of excitement caused by an external event sufficient to still his reflective faculties, thereby preventing opportunity for deliberation which might lead the declarant to be untruthful.” (People v Edwards, 47 NY2d 493, 497.) The statement, “Mommy pushed me” was made by the child to the paramedic within minutes of the eight-flight fall. Despite the fact that it was prompted by the inquiry of the paramedic, it is sufficiently spontaneous and trustworthy to be admitted into evidence as expressing the true belief of the child as to the cause of the fall. (See supra.) Further, this statement is given sufficient weight in light of the surrounding circumstances, to support a finding of child abuse against the respondent mother, absent corroboration of the “push”. Although the child recanted her initial version of what had happened, that her mother pushed her, this was done after she had an opportunity to speak with her family and deliberate as to the potential consequences such a statement might have on her family situation. Accordingly, the court gives little weight to the child’s in camera version of the event.
When tested by the criteria set forth above, the second statement implicating the respondent mother in the “pushing,” which was made by the child to the nurse, would be inadmissible as a spontaneous declaration. Although the statement was about the event, which was without question a startling one, it was not made when the child was under the shock and excitement of the eight-flight fall. The nurse asked Lydia if she was pushed by her mother and she responded “yes”. This statement was made at the hospital, several minutes after the event, and in direct response to a leading question. It was not made by the child without opportunity for deliberation and, therefore, does not satisfy the standard for admissibility as a spontaneous declaration.
*46 There being no evidence implicating the respondent father in the act of pushing, the allegations of abuse and neglect are dismissed as to him. Accordingly, the child, Lydia K., is found to be an abused child by the respondent mother and the allegations of abuse and neglect against the respondent father are dismissed.
An investigation and report and full evaluation and testing of all the parties is ordered.
This matter is set down for a dispositional hearing on March 23, 1984. Remand to the Commissioner of Social Services is continued.

 The present statutory burden of proof found in subdivision (b) of section 1046 of the Family Court Act requires that a determination of neglect or abuse be based on a *43 preponderance of the evidence. The propriety of the court’s use of this standard in determining whether a child is severely or repeatedly abused by a parent as defined in section 1012 (subd le], pars [i], [iii]) of the Family Court Act and section 384-b (subd 8, pars [a], [b]) of the Social Services Law, while questionable, has not been raised by the respondents. Recent amendments to article 10 of the Family Court Act and section 384-b of the Social Services Law (L 1981, ch 739, eff Oct. 26, 1981) permit termination of parental rights when a child is found to be severely or repeatedly abused. Accordingly, a review of the Supreme Court’s decision in Santosky v Kramer (455 US 745) in light of these amendments indicates that the standard of “clear and convincing” proof may be constitutionally required when making such a determination against a parent. (See Matter of Christine H., 114 Misc 2d 475; Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act, § 1046, p 388.)