OPINION OF THE COURT
Harvey M. Sklaver, J.
This matter is before the court on the Law Guardian’s *691 motion for an order directing that the 13-year-old subject child, Kim K., not be called as a witness at the fact-finding hearing.
Counsel for the Department of Social Services had previously informed the court that he intended to offer into evidence prior out-of-court statements that the child Kim had made to caseworkers and others. Counsel for the respondent grandmother, Helen B., who is Kim’s legal guardian, objected on the ground that Kim is sufficiently mature and intelligent to give testimony and be cross-examined. If only her out-of-court statements are received (Family Ct Act § 1046 [a] [vi]), he would want to call Kim as respondent’s witness. The Law Guardian asserted that Kim should not be required to testify because of her fragile emotional condition which is directly attributable to the circumstances surrounding this case and, on that basis, the Law Guardian made the present motion.[1] At the hearing held on the motion two witnesses were called by the Law Guardian, Dr. Nancy Schulman, a licensed psychologist, and Ms. Gaye Altman, a certified social worker, both of whom worked with Kim during her current residence at St. Christopher’s — Jennie Clarkson Child Care Center. Also, various reports made by Dr. Schulman were received in evidence and were deemed by the court to be part of her direct testimony subject to cross-examination. The essence of the evidence is that Kim is an emotionally fragile child who does not cope well with stress. While she does not want to live with her grandmother, Kim does not want to do anything or say anything to hurt her and for this reason Kim refuses to come to court to testify. Also, Kim feels that if she did testify it would not matter, that no one would listen and she would be returned to her grandmother. Both witnesses testified that whenever they attempted to discuss the subjects of Kim’s testifying or returning to her grandmother for more than a weekend or holiday visit Kim became visibly upset and exhibited emotional outbursts and b 'came very withdrawn. Indeed, she even became upset when her Law Guardian went to visit with her at Jennie Clarkson because she knew that he wanted to discuss this case and her testifying. Ms. Altman testified that Kim harbors feelings of guilt due to her inability to hold her family together and that there is a significant possibility *692 that she would break down if she were compelled to testify. Kim had told both witnesses that she would not come to court, if forced to do so she would not testify and if returned to her grandmother she would run away.
At the conclusion of the hearing counsel for the Department of Social Services took a position opposing the Law Guardian’s motion. Counsel stated that he needed to call Kim as a witness because there was no corroboration of her out-of-court statements which would render those statements sufficient for the court to make a finding of neglect against respondent grandmother (Family Ct Act § 1046 [a] [vi]).
The Law Guardian is painfully aware of his predicament. He recognizes that by Kim’s not testifying there is a substantial likelihood, if not a certainty, of the Department of Social Services’ inability to prove neglect with the result that Kim must be returned to her grandmother who has legal guardianship, as the court would have no jurisdiction to make any further orders (Matter of Dina V., 86 AD2d 875). Yet, return of the child to Ms. B. is precisely what Kim fears most and is a major factor in her present emotional condition. When the court articulated that to the Law Guardian his response was that, as the attorney for a person of sufficient age and comprehension, he made the motion in accordance with her express desires.
This court has a dual mandate. It must determine whether a child was neglected and also the likelihood of future neglect (Matter of Valerie Leonice T., 107 AD2d 327; Matter of T. D. Children, 161 AD2d 464), and it must also act to protect the child’s emotional and physical well-being (Family Ct Act § 1011). Recognizing the immediate and long-range consequences of the court’s acceding to Kim’s desire to not testify, this court simply cannot grant the motion and allow those consequences to occur without attempting to forestall them. Accordingly, the court will conduct an in camera interview with Kim in an attempt to cut the Gordian knot.
The court notes that an in camera interview with Kim poses a problem as to the legal impact of her testimony. Without repeating the entire development of the law relating to in camera interviews of a child beginning with the seminal case of Matter of Lincoln v Lincoln (24 NY2d 270), it will suffice to say that such an interview is now permitted in child protective proceedings (Matter of Christina F., 74 NY2d 532). In that case the court held that the child’s in camera testimony can *693 corroborate her prior out-of-court statements. The issue this court must address is whether the parties’ counsel may be excluded from the in camera interview and, if so, whether the court may make a finding of neglect based solely on that testimony.[2]
While Matter of Christina F. (supra) held that in a proper case the child’s in camera testimony can corroborate the prior out-of-court statements, the court’s conclusion was set against the child’s having been subjected to direct examination (presumably by counsel for the presentment agency) and cross examination by the respondent’s attorney, although the testimony was unsworn.[3] In earlier cases, however, the courts have not acted uniformly on the question of the exclusion of counsel. In Matter of Anne B. (131 Misc 2d 478) and Matter of Tara H. (129 Misc 2d 508), the respective courts apparently excluded counsel while the court in Matter of S. Children (102 Misc 2d 1015), balancing the due process rights of both the respondent and the child, permitted counsel to attend. But those pre-Christina F. cases (supra) do not resolve the question since the then-prevailing view was that the in camera testimony could not corroborate the prior out-of-court statements since it was not "additional” evidence or evidence of a "different type” within the definition of corroboration found in Family Court Act § 1046 (a) (vi) (e.g., Matter of Anne B., supra; Matter of Tara H., supra).
Subsequently, in Matter of Fawn S. (123 AD2d 871, 872), the court wrote: "and we have declared in dictum that the in camera examination of a child is appropriate in an article 10 proceeding (see, Matter of Bernelle P., 59 AD2d 764, affd 45 NY2d 937).” However, a careful reading of Matter of Bernelle P. leads this court to believe that such a brief statement, apparently made in passing, is too broad to constitute stare decisis on the present issue. In Matter of Bernelle P., the *694 Family Court Judge held an emergency removal hearing and in the course thereof examined the child in camera in the absence of the respondent and with no opportunity for cross-examination. Both the Appellate Division (59 AD2d 764, supra) and the Court of Appeals held that this was permissible to ascertain the best interests of the child at the dispositional phase of the proceeding. But as to the fact-finding phase the Court of Appeals, after examining the record of the hearing and the findings of fact, concluded that the Trial Judge placed no reliance on the child’s in camera statements in making the findings of neglect.
This court, directly addressing the issue, now holds that it may make a finding of neglect based solely on the in camera interview in the absence of respondent and her counsel and without regard to whether the child’s testimony is sworn or unsworn, at least under the procedure to be adopted in this case.[4] It is clear that a child’s in camera testimony constitutes evidence since in Matter of Christina F. (supra, 74 NY2d, at 537), the court stated that such testimony there given was "evidence * * * of a distinctly different quality from the child’s previous statements.” The in camera direct and cross-examination, etc., did not make the child’s testimony evidence —they made it evidence "of a distinctly different quality” from the child’s previous statements (Matter of Christina F., supra, at 537). Family Court Act § 1046 (a) (vi) does not require that a child’s testimony be corroborated, even when given in camera and unsworn (Matter of Vanessa R., 148 AD2d 989).[5] That section only requires that statements made by the child prior to the hearing be corroborated in order to be sufficient for the court to make a finding of neglect or abuse. It follows, then, that in a proper case in camera testimony alone can be sufficient to support a finding of neglect. The nature of that testimony, whether it is under oath or without oath, the child’s demeanor and the particular procedures adopted to protect the rights of the respondent are factors for the Trial Judge to consider in deciding whether the evidence, by itself, is of sufficient weight to do so.[6]
*695 This court’s conclusion here is not contrary to Matter of Christina F. (supra) because there the Court of Appeals did not reach the issue. Its decision that the in camera testimony can corroborate the child’s prior out-of-court statements was made in the posture of the case as it was presented to the Court of Appeals. At the trial level (Matter of Christina F., 135 Misc 2d 495, 498), Family Court framed the issue as "Thus, we must consider whether or not the child’s unsworn statements [in camera] constitute sufficient corroboration of the earlier hearsay testimony”. In analyzing the point, Family Court, citing Matter of Anne B. (131 Misc 2d 478 [which was decided prior to Matter of Vanessa R., supra]), wrote "Since the amendment [L 1985, ch 724, amdg Family Ct Act § 1046 (a) (vi)], it has been held that the child’s in camera, presumably unsworn, statements must be treated as out-of-court statements and 'may not, if uncorroborated, be sufficient for a finding of abuse or neglect’ although it 'may be used to effect the weight accorded a child’s prior out-of-court statements, or to corroborate other evidence’ ” (Matter of Christina F., 135 Misc 2d 495, 499, supra). The Family Court then concluded "In this court’s view, the recent amendment can only be interpreted as permitting the unsworn testimony of a child to confirm his or her own previous statements * * * assuming such testimony 'tend[s] to support the reliability of the previous statements’ ” (supra, at 500). This was the posture of the case as it reached the Court of Appeals and that court went no further than necessary to resolve the issue. Thus, the court cannot conclude from Matter of Christina F. (supra) that the presence of counsel and their right to examine and cross-examine is required in all cases.
In the instant case the court need not press the principle to its limits. Recognizing that due process must be observed in child protective proceedings (Family Ct Act § 1011; see, Matter of S. Children, 102 Misc 2d 1015, supra), and that the limits of due process may be difficult to define (see, Matter of McGee, 131 Misc 2d 1037, supra), this court will fashion a procedure which it hopes will properly balance the needs of the presentment agency, the respondent grandmother and the child.
1. Counsel for the Department of Social Services by March 14, 1991, shall serve upon all other counsel and deliver to the court a list of questions for the court to pose to Kim at the in camera interview.
2. All other counsel, by March 21, 1991, shall serve upon *696 the Department’s counsel and upon each other and shall deliver to the court a list of any further questions for the court to pose to Kim.
3. All counsel, by March 28, 1991, shall serve upon each other and deliver to the court a final list of questions for the court to pose to Kim.
4. On April 19, 1991, the court will interview Kim, in camera, with a reporter present. None of the attorneys, except the Law Guardian, will be present. At the interview the court will attempt to secure answers to the questions propounded by counsel. Depending upon all the circumstances at the time of the interview, including Kim’s demeanor, the court will determine whether she is to testify under oath or without being sworn (Family Ct Act § 152 [b]), and, in its discretion, may omit asking certain questions or inquiring into certain subjects or may make other or further inquiry of Kim. The transcript of the in camera interview will not be sealed and copies may be secured by all counsel.[7] Thereafter, the court will schedule a hearing for such further proceedings as may be appropriate, including motions addressed to Kim’s testimony.

. The court, in a proper case, may receive a child’s out-of-court statements and, yet, make a protective order dispensing with the child’s testimony in court (Matter of McGee, 131 Misc 2d 1037).

. The court has not been made aware of Kim’s previous out-of-court statements and, therefore, does not know whether they are sufficient to support a finding of neglect even if they will be corroborated. Consequently, at this time the court must assume that they will not be sufficient and address the question of whether the in camera testimony can go further and independently furnish the added proof to sustain a neglect finding.

. It should be noted that whether Kim testifies under oath or unsworn is not necessarily dispositive because in Matter of Christina F. (74 NY2d 532, supra) the child’s unsworn testimony was sufficient corroboration of her out-of-court statements, while in Matter of Nicole V. (71 NY2d 112), the child had signed an affidavit which the court held was not sufficient corroboration. (See also, Family Ct Act § 152 [b].)

. It may be unnecessary to go that far in this case since the in camera testimony may be sufficient to corroborate Kim’s previous out-of-court statements.

. The reported decision does not reveal whether counsel were present to examine and cross-examine the child.

. Even if it is not alone sufficient under the facts of the case, it may still be sufficient to constitute corroboration of the prior out-of-court statements (Matter of Christina F., 74 NY2d 532, supra).

. The sealing of the transcript directed in Matter of Fleishman v Walters (40 AD2d 622) and Matter of Anne B. (131 Misc 2d 478, supra) will not be ordered in this case because of the potential violation of due process that would result.